[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-12089

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BRIAN JONES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cr-00260-VMC-TGW-1

_____

2                    Opinion of the Court                    23-12089

Before JORDAN, NEWSOM, and LAGOA, Circuit Judges.

PER CURIAM:

Brian Jones appeals his 70-month sentence for two counts of distribution and possession with intent to distribute fentanyl and one count of distribution and possession with intent to distribute para-fluorofentanyl.  On appeal, Jones argues that the district court erred by imposing the premises enhancement under the text of U.S.S.G. § 2D1.1(b)(12) and the accompanying commentary because it did not properly weigh his lawful and unlawful uses of the relevant premises.[1]  After careful review of the parties' arguments, we affirm.

"This Court reviews *de novo* a district court's interpretation of the guidelines and its application of the guidelines to the facts, but it reviews the district court's factual findings under the clear-error standard." *United States v. George*, 872 F.3d 1197, 1204 n.6 (11th Cir. 2017).  "Whether a defendant maintained a premises for the manufacture or distribution of drugs is a finding of fact that we review under the clear-error standard." *Id.* at 1205.  "A factual finding is clearly erroneous when, upon review of the evidence, we are

---

[1] In his initial brief, Jones argues that the district court erred by granting deference to the commentary accompanying U.S.S.G. § 2D1.1(b)(12) when it imposed a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance based on his residence. In his reply brief, however, Jones concedes that this argument is barred by the invited-error doctrine.

left with a definite and firm conviction a mistake has been made." *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015).

Under the Sentencing Guidelines in effect at the time of Jones's sentencing, "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance," his offense level should be increased by two levels. U.S.S.G. § 2D1.1(b)(12) (2021). The commentary to that subsection explains that it "applies to a defendant who knowingly maintains a premises (*i.e.*, a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution." *Id.* § 2D1.1, cmt. 17. The commentary continues:

> Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (*e.g.*, owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.
>
> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently

the premises was used by the defendant for lawful purposes.

*Id.* "Courts should 'view the totality of the circumstances to determine whether a defendant "maintained" a premises for drug distribution or manufacture.'" *United States v. Rodriguez*, 75 F.4th 1231, 1242 (11th Cir. 2023) (quoting *George*, 872 F.3d at 1205).

In *George*, we affirmed a district court's application of the premises enhancement under the clear-error standard based on two alternative premises: (1) a barbershop salon and (2) the defendant's apartment. 872 F.3d at 1206. We concluded that the salon satisfied the premises enhancement because there was evidence that the salon contained drugs, "equipment for packaging and distributing drugs," and employees who worked for the defendant. *Id.* Additionally, there was evidence that the defendant had offered to sell drugs to two different individuals at the salon and that he had admitted that he made money through the sale of drugs at the salon. *Id.* We then alternatively concluded that the defendant's apartment supported the enhancement because there was evidence that the defendant had purchased drugs there, and a witness stated he saw in the apartment "two other men, packaging equipment, scales, heat-sealing machines, and firearms." *Id.* We rejected the argument that the enhancement did not apply to the apartment on the ground that the defendant lived there because "a premises can have more than one primary use, so long as the drug activity is more than 'incidental or collateral.'" *Id.* (quoting U.S.S.G. § 2D1.1, cmt. 17).

23-12089                Opinion of the Court                      5

In *Rodriguez*, we upheld the application of the premises enhancement based on the defendant's home. 75 F.4th at 1243. In that case, law enforcement discovered in the trash "supplement packaging with unknown white powder, discarded pills, ventilator masks, and gloves," and, when they searched the house, they found the defendant trying to flush pills down the toilet. *Id.* Additionally, they found in the house "56 grams of methamphetamine, approximately 300 grams of heroin, approximately 10 grams of counterfeit pills containing methamphetamine, $50,000 in cash, a chemical mask, and two scales." *Id.* Lastly, the defendant admitted that he had engaged in drug-related activity at his house, including "sorting the materials, getting the powders, examining them and storing pressed drugs and distributing pressed drugs." *Id.* We again rejected the argument that the enhancement did not apply because the premises was also the defendant's residence based on the same reasoning as in *George*. *Id.*

Here, the district court did not clearly err by applying the premises enhancement because there was sufficient evidence to support its conclusion that Jones "maintained a premises for the purpose of manufacturing or distributing a controlled substance." *See George*, 872 F.3d at 1205; U.S.S.G. § 2D1.1(b)(12) (2021). Record evidence shows that Jones conducted two drug transactions with a confidential source at his home, that he packaged the drugs in his kitchen on one of those occasions, and that law enforcement discovered in his kitchen drugs, "two blenders containing powder residue, a digital scale with powder residue, a plastic container and spoon with powder residue, plastic baggies and capsules consistent

with narcotics packaging, two-kilogram presses, and a container labeled 'Super Mannitol,' a cutting agent," as well as firearm ammunition.  Although Jones also used the apartment as his residence, "a premises can have more than one primary use" and the record supports that the drug activity at Jones's apartment was "more than 'incidental or collateral.'" *See George*, 872 F.3d at 1206; *Rodriguez*, 75 F.4th at 1243.

To the extent Jones argues that the district court failed to consider how frequently the premises was used for distributing drugs versus lawful purposes, we disagree.  The record shows that the court weighed the lawful and unlawful uses of the apartment at Jones's sentencing hearing when determining to apply the enhancement.

We conclude that the district court did not clearly err by imposing the premises enhancement.

**AFFIRMED.**